UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| FREDERICK L. GRIFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 4:08-CV-68 |
| THE CITY OF FAYETTEVILLE, | ) *LEE* |
| TENNESSEE; OFFICER SAM T. SMILEY, | ) |
| and SERGEANT BILLY R. BRAZIER, | ) |
| Police Officers with the Fayetteville Police | ) |
| Department, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Before the Court is Defendants' motion for summary judgment in this § 1983 excessive force case [Doc. 37]. Plaintiff Frederick L. Griffin ("Plaintiff") alleges that Defendants Sam T. Smiley ("Smiley") and Billy R. Brazier ("Brazier") violated his Fourth, Eighth, and Fourteenth Amendment rights and that the City of Fayetteville ("City") is liable because it failed to properly train and/or supervise Smiley and Brazier. After Defendants moved for summary judgment on all counts, Plaintiff ceded his Eighth and Fourteenth Amendment claims and all claims against the City. Accordingly, Defendants' motion for summary judgment [Doc. 37] is **GRANTED** with respect to Plaintiff's Eighth and Fourteenth Amendment claims and municipal liability claims. Only the Fourth Amendment claim and a state law claim for assault and battery remain. For the reasons explained below, Defendants' motion for summary judgment [Doc. 37] is **DENIED** with respect to Plaintiff's Fourth Amendment claim.

**I.      STANDARD OF REVIEW**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A "material" fact is one that *matters* – i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Id.* A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Instead, the court must view the facts and all inferences that can be drawn from them in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports*, 253 F.3d at 907.

In ruling on a motion for summary judgment, the court may consider any affidavits along with any pleadings, depositions, answers to interrogatories, or admissions. *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 450 (6th Cir. 2005). The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries this burden, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rely solely on the allegations in its pleadings. Fed. R. Civ. P. 56(e). In other words, the non-moving party must present some significant, probative evidence indicating the necessity of a trial to resolve a material, factual dispute. *Id.* A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d

2

797, 800 (6th Cir. 2000). If the non-moving party fails to show a genuine dispute with respect to material facts regarding any element essential to its claim and on which it bears the burden of proof, then the moving party is entitled to judgment as a matter of law and summary judgment is therefore appropriate. *Celotex*, 477 U.S. at 322.

## II. FACTUAL BACKGROUND

On October 10, 2007, Plaintiff's mother, Helen Harney ("Harney"), was involved in a car accident with an 18-wheeler truck in Fayetteville, Tennessee [Doc. 48 at ¶¶ 1-3]. Brazier responded to the scene at around 10:54 a.m., as did fire department and Emergency Medical Services ("EMS") employees [Doc. 48 at ¶ 1, 4]. After observing the relative positions of the vehicles, Brazier approached Harney and asked her for her driver's license, registration, and proof of insurance [Doc. 48 at ¶ 4]. He then left her to the care of the other emergency responders [*id.*]. Brazier cited Harney for failure to maintain control, and as he approached Harney's car to issue the citation and get her written statement, Plaintiff arrived on the scene [Doc. 48 at ¶ 5; 45-4 at 1, 6]. Harney had given Plaintiff's telephone number to a person at the scene, who then called Plaintiff to inform him about the accident [Doc. 45-1 at ¶ 2-3].

Upon Plaintiff's arrival at the scene, the parties' accounts diverge. According to Defendants, Plaintiff was "ranting and raving," "very irate," and "extremely agitated." [Doc. 48 at 6]. Defendants have not submitted the affidavits or depositions from which these "facts" were taken, however, and there is no evidence, therefore, that Plaintiff was "irate" or "agitated." Accordingly, notwithstanding the characterization of events in Defendants' brief, the account presented here is

Plaintiff's.[1]

As Plaintiff approached his mother's car, Brazier was "repeatedly" asking Harney for her license and registration and asking her to sign some papers, a request she was having difficulty complying with because the contents of her purse had scattered during the accident [Doc. 45-1 at ¶ 3].[2] An "ambulance driver" had told Plaintiff that his mother needed to be checked for "non-seen" injuries at the hospital, and Plaintiff told her to "wait until she had been checked out" before signing the papers [*id.*]. Brazier told Plaintiff to stop interfering with his duties, and Plaintiff responded, "this is my mother." [Doc. 45-1 at ¶ 4]. A bystander, Darlene Moyers ("Moyers"), averred that Plaintiff's voice was "slightly raised" when he stated "that's my mom," but she did not hear him raise his voice otherwise [Doc. 45-2 at ¶ 7]. Brazier told Plaintiff he was under arrest and to get on the ground [Doc. 45-1 at ¶ 4]. Plaintiff "explained" that he could not get on the ground because he had screws and rods in his back from a back surgery, and instead placed his hands on Harney's car in the "arresting position" [*Id.*]. Brazier repeated his order, and Plaintiff repeated his explanation, then lay across the car with his hands folded behind his back [*id.*]. Plaintiff asked the officer whether he was going to arrest him, and the officer responded by again ordering him to the ground [*id.*]. When Plaintiff told him again he could not because he had rods and screws in his back,

---

[1] Defendants have submitted only the affidavit of Chief of Police Douglas Carver, who was not present at the scene and whose averments relate only to the City's liability, no longer at issue. Inexplicably, they have not filed the depositions of Brazier, Smiley, Cross, and Moon, which they cite for their version of events [*see* Doc. 38 at 2-3; Doc. 48 at ¶¶ 6-25]. A party cannot support its motion for summary judgment with its brief alone, but must submit *evidence* showing entitlement to summary judgment. *See* Fed. R. Civ. P. 56(e)(1). As a practical matter, however, the lack of Defendants' evidence may be of little consequence, because the Court must take any disputed facts in the light most favorable to Plaintiff, the non-moving party. *Nat'l Satellite Sports*, 253 F.3d at 907.

[2] In Plaintiff's affidavit, Brazier is referred to as an unnamed "officer," but the parties do not dispute that the officer was in fact Brazier [*see* Doc. 48 at ¶¶ 5-13].

Brazier called for backup.

When Smiley arrived,[3] Plaintiff was leaning against Harney's car [Doc. 45-1 at ¶ 5]. Smiley got out of his car with gun drawn. Brazier sprayed Plaintiff's face, throat, and eyes with a chemical spray called "Freeze Plus P," but the spray also hit Smiley in the eyes, causing him to "t[ake] off running and pull[] his glasses off."[4] [*id.*]. Brazier continued to spray Plaintiff "until it seemed like the can was empty" and Plaintiff felt like he could not breathe [*id.*]. Both Brazier and Smiley then threw Plaintiff to the ground in the broken glass from the accident, with Brazier placing his knee in Plaintiff's back, "cuss[ing] him" [Doc. 45-1 at ¶ 6; Doc. 45-2 at ¶ 12; Doc. 48 at ¶ 23]. This caused Plaintiff "so much pain that [he] could not move [his] legs." [*Id.*]. Brazier and Smiley handcuffed Plaintiff with two pairs of handcuffs attached to each other because of the size and breadth of Plaintiff's arms and back [Doc. 48 at ¶ 24]. Brazier and Smiley then dragged Plaintiff through the broken glass to the police car, and his arm and hand were cut in the process [Doc. 45-1 at 6]. Meanwhile, Plaintiff's mother, sister, and father were yelling to the police officers that Plaintiff had had back surgery and "all of this was not necessary," but Plaintiff did not recall exactly what was said [*id.*]. Plaintiff was then forced into the police car [*id.*].[5]

During the entire encounter, Moyers averred Plaintiff did not "make any move" toward the

---

[3] Similarly, Smiley is referred to as "the second officer" in Plaintiff's affidavit, but the parties do not dispute that the second officer was in fact Smiley [see Doc. 48 at ¶¶ 14-20].

[4] Plaintiff's affidavit refers to the chemical spray as "mace," but the parties agree that the chemical was Freeze Plus P [Doc. 48 at ¶ 22]. Defendants apparently maintain that Plaintiff knocked the glasses from Smiley's face during a scuffle [Doc. 48 at ¶ 16], but Moyers averred that "this simply did not occur." [Doc. 45-2 at ¶ 22].

[5] Plaintiff also submits evidence relating to his medical treatment following his arrest [Doc. 45-1 at ¶¶ 7-9], but Plaintiff has not sued his jailers or alleged they were deliberately indifferent to his medical needs. *See Willis v. Charter Tp. of Emmett*, 360 F. App'x 596, 602 (6th Cir. 2010).

5

officers and "was letting the officers know that he was putting up no resistance whatsoever." [Doc. 45-2 at ¶¶ 7, 8, 11]. Both parties, however, have represented to the Court that Plaintiff was convicted of resisting arrest and disorderly conduct for his actions during the events giving rise to this litigation.[6] On the other hand, Defendants have not raised an estoppel defense, and the Court will not speculate as to the facts found by the criminal court.[7] Consequently, while the Court cannot assume that Plaintiff never resisted arrest during the encounter, neither can the Court assume he was resisting arrest at the time Brazier and Smiley used the force that Plaintiff argues was excessive.

## III.  ANALYSIS

A claim under 42 U.S.C. § 1983 has two elements: first, that the defendant's conduct deprived the plaintiff of rights secured by federal law, and second, that the defendant was acting under color of state law. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). Only the former is at issue in an excessive force claim against police officers. *See Miller v. Sanilac County*, 606 F.3d 240, 248 (6th Cir. 2010). Even if the officer has violated a plaintiff's constitutional right, however, she may yet be entitled to qualified immunity if that right was not "clearly established." *See id.* at 247. Until 2009, courts addressed the question of whether there was a constitutional violation before considering whether the right was clearly established. *See*, *e.g.*, *King v. Ambs*, 519 F.3d 607, 612 (6th Cir. 2008) (following *Saucier v. Katz*, 533 U.S. 194 (2001)). Now, however, courts now have the discretion to answer the questions in whatever order "best

---

[6] Defendants' brief mentions that Plaintiff has filed a motion for new trial on the criminal convictions, but neither party addressed the impact of the convictions or the motion for new trial, if any, on the issues addressed herein.

[7] Again, Defendants have submitted absolutely no evidence other than Chief Carver's affidavit, which is material only to municipal liability.

6

facilitate[s] the fair and efficient disposition" of the case. *Pearson v. Callahan*, 129 S. Ct. 808, 821-22 (2009). While the order of the inquiries is now within the trial court's discretion, their natures remain the same, and the case law pre-dating *Pearson* therefore remains good law. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009).

### A. Were Plaintiff's Fourth Amendment Rights Violated?

Plaintiff contends Brazier and Smiley violated his Fourth Amendment right to be free from excessive force during an arrest.[8] *See Graham v. Connor,* 490 U.S. 386, 394-95 (1989) (locating such a right in the Fourth Amendment's prohibition of unreasonable seizures). When an officer makes a lawful seizure,[9] she may also use "some degree of physical coercion or threat thereof to effect it." *Id.* at 396. The use of force is not excessive if comports with "objective standards of reasonableness," *Saucier*, 533 U.S. at 202, and the seizing officer's subjective motivations are therefore irrelevant. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). The reasonableness of force is judged in light of the totality of the circumstances with "particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (*quoting Graham*, 490 U.S. at 396).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citation omitted).

---

[8] Plaintiff's complaint also states that the conduct of Brazier and Smiley "exemplified . . . false arrest [and] malicious prosecution." However, Plaintiff does not allege that his arrest and prosecution were not supported by probable cause. *See Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). Furthermore, if Plaintiff did intend to assert claims of false arrest and malicious prosecution, it would appear he has since abandoned them; Plaintiff does not mention those theories at all in his response to Defendants' motion for summary judgment.

[9] The authority of Brazier and Smiley to seize Plaintiff is not at issue here. *See* note 6, *supra*.

Courts must pay "deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). On the other hand, force may be "excessive" even if it does not cause serious injury. *See Miller*, 606 F.3d at 253 ("plaintiff may 'allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.'"); *accord Wilkins v. Gaddy*, 130 S. Ct. 1175, 1176-77 (2010). Rather than look for some arbitrary level of injury, courts ask whether the violence was "gratuitous" in light of the threat posed by the arrestee to the officer or others. *See Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394, 404-05, 407 (6th Cir. 2009). In other words, a reviewing court must balance the consequences to the individual against the government's interests in subduing him. *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (*citing Graham*, 490 U.S. at 396).

Thus, if a detainee poses a threat to law enforcement officers or others or is actively resisting arrest, the officers may use force, commensurate with the threat or resistance, to subdue him. *See Morrison*, 583 F.3d at 404-05; *Burchett*, 310 F.3d at 944 (some force while handcuffing plaintiff was permissible when plaintiff "twisted and turned some" causing officers "difficulty in restraining him."). On the other hand, once the detainee has been subdued, officers may not use force to "punish" him. *See Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (strike to plaintiff's knee after he had fallen to the ground, intended as punishment for flight, was unreasonable). Accordingly, if a detainee is incapacitated or subdued or has submitted to the seizure, further use

of significant force is unconstitutional.[10] *See Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009); *Morrison*, 583 F.3d at 405 (arrestee was "totally compliant"); *Wysong v. City of Heath*, 260 F. App'x 848, 855 (6th Cir. 2008) ("[F]orce can easily be excessive if the suspect is compliant."). Even if the detainee has initially resisted arrest, his later compliance with officers' commands may obviate the need for force. *See Baker*, 471 F.3d at 607-08 (holding that the plaintiff's earlier "attempt[] to evade arrest d[id] not preclude his claim of excessive force" where he was compliant at the time force was applied).

The Sixth Circuit Court of Appeals has provided ample guidance in applying these principles to the use of a chemical spray. An officer may use a chemical spray to subdue a violent, unsecured suspect, but may not use such a spray on an individual who is not resisting arrest. *Compare Abdul-Khaliq v. City of Newark*, 275 F. App'x 517, 521 (6th Cir. 2008) ("brief dose" of pepper spray was not excessive where suspect was yelling and cursing at officers and gesturing to the officers by vigorously opening his coat) *with Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (use of pepper spray was excessive where defendant was being arrested for a relatively minor crime, was unarmed, and was not actively resisting arrest). Even if a suspect is resisting arrest, the use of chemical spray may be excessive where the crime is not severe (e.g., a "low-level disturbance in a public place") and the arrestee is not threatening anyone's safety or attempting to flee. *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002). Finally, even assuming that the use of chemical spray is warranted,

---

[10] The rule could not be otherwise. An officer may use reasonable force, or the threat of it, to *effect* a seizure. *Graham*, 490 U.S. at 396. Once a suspect has submitted to an officer's commands or show of authority, the seizure has been effected. *See United States v. Smith*, 594 F.3d 530, 535-36 (6th Cir. 2010). There is no legitimate government interest in the use of significant force to subdue an individual who has already been seized and is not resisting. *Morrison*, 583 F.3d at 404-05.

9

officers may not continue to spray an arrestee after he is incapacitated or complies with their instructions.[11] *See Adams v. Metiva*, 31 F.3d 375, 384, 386 (6th Cir. 1994).

### 1. Sergeant Brazier

Under Plaintiff's version of the facts, Brazier's use of force was objectively unreasonable. When Plaintiff was leaning against the car, Brazier sprayed him with Freeze Plus P, almost emptying the can in the process.[12] Brazier and Smiley then took Plaintiff to the ground, with Brazier kneeling on Plaintiff's back, handcuffed him, and dragged him through the glass to the patrol car. As in *Grawey* and *Adams*, the charges for which Plaintiff was being arrested were relatively minor. Furthermore, under Plaintiff's version of the facts, corroborated by another witness, Plaintiff posed no immediate threat to Brazier or anyone else. Instead, Plaintiff complied with Brazier's commands as far as possible in light of his medical condition, which he explained to Brazier three times. Finally, for purposes of this motion, the Court must assume Plaintiff was not resisting arrest when Brazier used the chemical spray.[13] Plaintiff's "refusal" to get on the ground could support any use of force only if it was reasonable for Brazier to order him to the ground despite his back injury, and there is a genuine issue of fact regarding whether it was necessary to expect Plaintiff to get on the

---

[11] This is true not only as a matter of constitutional law, but also under the City's Police Department policy. According to the affidavit of Chief of Police Douglas Carver, the City's officers may use chemical spray only in a one-second burst [Doc. 40 at 10].

[12] It is unclear how long Brazier sprayed Plaintiff, but it is a reasonable inference from Plaintiff's version of the facts that it was at least long enough for Smiley to pull his glasses off, take off running, then return to the confrontation to assist Brazier in taking Plaintiff to the ground.

[13] As noted above, although Plaintiff was convicted of resisting arrest, Defendants have not submitted facts to carry their evidentiary burden on this motion for summary judgment. *See Celotex*, 477 U.S. at 323. Plaintiff's resistance would be material to the excessive force determination only if he was actively resisting at the time the force was applied. *See Baker*, 471 F.3d at 607-08. Furthermore, even assuming Plaintiff was actively resisting arrest, the use of the entire can of chemical spray might have been an excessive response to a minor offense.

ground. A reasonable jury could therefore find that Brazier's use of chemical spray to enforce his order was not warranted in the circumstances.

The use of physical force to take Plaintiff to the ground follows a similar analysis. If it was unreasonable for Brazier to require Plaintiff to get on the ground, then it was also unreasonable to use physical force to take him to the ground. The use of physical force is even more likely excessive than the use of the chemical spray, in fact, because Brazier knew that the man whose back he was kneeling on had been injured. *See Jones v. Garcia*, 345 F. App'x 987, 989 (6th Cir. 2009) (officer used excessive force in pulling him from the ground by his arm, which the officer knew to be injured). Finally, a reasonable jury could conclude that dragging Plaintiff through the glass was excessive because it was an "unnecessary and painful method" to move him into the police car. *See Solovy v. Morabito*, 2010 WL 1687722, at *6 (6th Cir. 2010) (unpublished). The Court concludes that, under the facts presented by Plaintiff, there is a triable issue of fact with respect to the reasonableness of Brazier's conduct.

### 2. Officer Smiley

Smiley's conduct must be measured against the totality of the circumstances that confronted him upon arriving at the scene, and the circumstances known to Brazier cannot be imputed to him. *See Miller v. City of Pinckney*, 2010 WL 547072, at *2-3 (6th Cir. 2010) (unpublished) (analyzing newly arrived officer's actions in light of the facts known to that particular officer). At least two factors support Smiley's use of force. First, he was responding to a call for backup from a fellow officer who was attempting to arrest a suspect, and there is no evidence that Smiley knew that the charges were relatively minor. Similarly, there is no evidence that Smiley heard Plaintiff's explanation why he was unable to get on the ground. Consequently, Plaintiff has not shown that

Smiley's initial show of force (namely, approaching with gun drawn) was unreasonable. *See Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (holding that the plaintiff could not survive summary judgment based on inferences from a "lack of evidence"). After assessing the situation, however, there is at least a genuine issue of fact with respect to whether it was reasonable for Smiley to use physical force to take Plaintiff to the ground. Under Plaintiff's version of the facts, when Smiley arrived, Plaintiff did not pose a threat to the officers or anyone else because he was merely leaning against the car, and he was not then resisting the officers or attempting to flee. A reasonable jury could find that taking Plaintiff to the ground and dragging him through the glass was "gratuitous." Thus, the Court concludes there is a triable issue of fact with respect to the reasonableness of Smiley's conduct.

### B.     Were Plaintiff's Rights Clearly Established?

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The reviewing court's "focus is on whether the officer had fair notice that her conduct was unlawful . . . ." *Id.* An officer is not entitled to summary judgment on qualified immunity grounds if the plaintiff alleges "sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)). Those rights must be "clearly established" in a "particularized" and "relevant" sense. *Wysong*, 260 F. App'x at 855 (*quoting Saucier*, 533 U.S. at 201). In the context of an excessive force claim, this particularity requirement is met if the officers were on notice that the means they used were "more forceful than necessary." *Binay v.*

*Bettendorf*, 601 F.3d 640, 652 (6th Cir. 2010). *See also Jones*, 345 F. App'x at 988 (law is clearly established that officers may not use objectively unreasonable force in the course of making an arrest); *Burchett*, 310 F.3d at 945-46.

Plaintiff has shown sufficient facts to support his claim that Brazier and Smiley violated his clearly established rights. The constitutional principles explained above are not new, nor are they controversial. At the time Plaintiff was arrested, it was clearly established in the Sixth Circuit that officers may use only reasonable force during a seizure. *Binay*, 601 F.3d at 652. Consequently, having concluded that a reasonable jury could find the conduct of Brazier and Smiley to be unreasonable under Plaintiff's version of the facts, the Court does not hesitate to conclude that the same conduct may have violated Plaintiff's clearly established rights. *See Wysong*, 260 F. App'x at 849 (holding, with respect to an arrest that occurred in 2002, that "the right to be free from physical force when one is not resisting the police is a clearly established right."). Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's excessive force claim against Brazier and Smiley is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [Doc. 37] is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Defendants' motion for summary judgment with respect to Plaintiff's § 1983 claims against the City is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**.

(2) Defendants' motion for summary judgment with respect to Plaintiff's § 1983 claims for violations of his Eighth and Fourteenth Amendment rights is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**.

(3) Defendants' motion for summary judgment with respect to

> Plaintiff's § 1983 claims against Brazier and Smiley for violations of his Fourth Amendment right to be free of excessive force is **DENIED**, and those claims will proceed to trial.

Defendants did not move for summary judgment with respect to Plaintiff's state law assault and battery claims, and those claims will therefore proceed to trial alongside the excessive force claims.

SO ORDERED.

ENTER:

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE